Carr, J.
Taking this as a foreign attachment, by which the plaintiff seeks to condemn in the hands of Glassell, a debt which he owes the absent defendant Towles, to satisfy a debt which Towles owes Thomas, the first inquiry seems naturally to be, whether Glassell owes Towles such a debt as will justify the decree sought ? It was agreed on all hands, that the rights and interests of Towles and Glassell must be settled precisely as if they were the only parties before the court, Thomas’s claim being only to such debt or duty as Glassell might be found to owe to Towles. The deed from Glassell to Towles contains covenants of warranty, good title, and lawful right to convey, and Towles’s deed to Thomas the same. Suppose Thomas had recovered at law on the covenant of title, his purchase money and interest of Towles, and Towles had recovered a judgement for the same, against Glassell, could Glassell have had relief from that judgement, in a court of equity, in any form ? It is in clear proof, that the mistake with respect to the land, was intirely innocent. Glassell had 2000 acres of land lying along side of Lewis’s, to which bis title is undoubted, and which in point of soil, water and seats for a mill and distillery, was (if we, may credit the evidence) superiour to that conveyed : this was the Mercer tract. He shewed his title papers, at the time of the contract; and both the parties knew, that it was the Mercer land (part of it, at least) that he meant to sell; but, unluckily, Lewis’s land was mistaken for it. It is not so strange, that persons living in Virginia, and wholly ignorant of the land, should have fallen into this error, as that the neighbours and the *125 surveyor of the county himself, should have led them into it. It is well settled law, that although there be no fraud, or default on either side, yet the mutual error of the parties, if that error be in a matter which is the cause of the contract, that is, in the substance of the thing contracted for, is a good ground for rescinding even an executed contract. Graham v. Hendren, 5 Munf. 185. Chamberlaine v. Marsh’s adm’r, 6 Id. 283, 7. Tucker v. Cocke, 2 Rand. 66. Thompson v. Jackson, 3 Id. 504, 7. Lamb v. Smith, 6 Id. 552. Under this rule, I have no doubt, that, if Towles had obtained a judgement at law on the covenant in the deed, Glassell might have filed a bill injoining that judgement, bringing the whole subject before the court, and praying that Towles might, if he elected to do so, take his choice of 1000 acres of the Mercer land at valuation, or that, in case of his refusal, the contract might be rescinded and the parties placed in statu quo. When I speak of the contract, I mean the whole contract, embracing the Madison as well as the Kentucky land. It was strenuously contended, and ably too, that there were two several and distinct contracts ; and that, therefore, the mistake in the Kentucky land, ought not to disturb the sale of the Madison land, about which there was no error. But to me it is quite clear, that it was all but one contract. The very terms of the agreement, the admissions of the parties to it, and the proof of the witnesses establish this. By the agreement Towles sells his land to Glassell for 15 dollars 50 cents per acre, and agrees to take 1000 acres of Kentucky land at valuation, and at the delivery of his land to Glassell, the money to be paid down, if there is any left after deducting the valuation of the Kentucky land : this incorporates and makes them one intire contract. Again, the plaintiff in his own bill states, that Glassell having land in Kentucky which he wished to sell and invest the proceeds in Madison land, in order to effect his wishes, proposed trading with Towles for his land; and that Towles, yielding to the influence of the considerations pressed upon him by Glassell, concluded *126 a contract with him, hy which he sold him his Madison land at 15 dollars 50 cents per acre, and agreed to receive in part payment for it, one of Glassell’s tracts at valuation. The answer of Glassell, after stating that the proposal to sell came from Towles, and that the price he asked for his land was so high, that he declined the purchase unless Towles would take 1000 acres of his Kentucky land at valuation, adds, that his main leading inducement for the purchase of Towles’s land, as Towles well knew, was the selling his Kentucky land. Towles, in his deposition, so far from denying this, confirms it; he says, that Glassell agreed to purchase his land of him, upon condition that he would take 1000 acres of Kentucky land ; that he did not wish to take the Kentucky land, but rather than not sell, he agreed to take it at valuation; and that he does not believe Glassell would have bought his land, if he had not agreed to take the Kentucky land. It is most clear to me, that in the purchase of the Madison land, the making payment in the Kentucky land, so far it would go, was as much a part of the contract, as the payment of the balance in money was: and any man acquainted with the ordinary transactions of life, must know, that with Glassell it would probably be a most important consideration. How often do we see a price given for property, when it is to be paid for in barter, labour or other facilities, which the buyer would not have an idea of giving if it were to be paid in money?
The mistake which occurred, was as much the work of Towles as of Glassell; for though the plat taken by Robert Glassell, described the lapd of Lewis, instead of the Mercer tract, yet this was a mere transcript from the surveyor’s book, not founded on actual survey, with no courses and distances, and was not intended to govern, and did not govern, the parties, in the consummation of the contract. This is clear, from that part of the agreement, which provides that the land in Kentucky shall be surveyed by an authorized legal surveyor at the expense of Glassell. Under this provision, it was the business of Towles to see to the *127 survey, and have it correctly made : he sent his sou to attend to this, and if he had taken along with him the description of the land from the patent to Mercer, the mistake into which the plat of 1814 was leading them, would have been discovered; the true land would have been surveyed ; and, as no particular tract was specially wished for by Towles, the contract would have been correctly executed. But, instead of this cautious course, young Towles went, without any title papers, to the surveyor Ruby ; and he surveyed the Lewis instead of the Mercer tract. Both parties then may be considered equally instrumental in producing this innocent mistake. Would it not, in such a case, be exceedingly harsh to say that the whole loss should fall upon Glassell? that he should be obliged to hold the Madison land, and pay 6200 dollars for it, all in money, when he had contracted to pay nearly half of it in land, and would have bought on no other condition ? and this too, when the very land, which he meant to give in part payment, was there, lying by the side of the land conveyed, and equal if not better than that land in every respect; and when from the moment the mistake was discovered, Glassell was willing and offered to convey an equal quantity of this land, at valuation, and to pay with interest whatever it might fall short of the amount to which the Lewis land was valued. I cannot think that such a decree would be consistent with the settled course of decisions, or the true spirit of equity.
It was contended, that though the parties were in a court of equity, yet that the plaintiff had come here upon his legal rights (which the absence of Towles enabled him to do); and that in such cases, equity must proceed according to strict legal rule; that if Towles were in a court of law, sueing Glassell upon his covenants, no equitable defence, no correction of the mistake, or rescinding of the contract, could be heard : and, therefore, that Glassell can make no such defence in this foreign attachment. To this position I can by no means assent. I admit, that the legal claim, in such cases, must be governed by legal rulesbut if there *128 is an equitable defence, of which, after judgement at law, the defendant might avail himself in equity, of that defence he may take advantage in the foreign attachment, otherwise he would lose it intirely. Upon the whole case, I think the court below erred exceedingly, in considering Glassell the debtor of Towles, and decreeing against him the sum of 3639 dollars, or any sum in money.
Cabell, J.
I have given very great consideration to this case, and have found unusual difficulty in forming an opinion upon it.' My mind is not, even now, free from doubts. But I feel constrained to yield my doubts, to the positive and unanimous convictions of the other judges. I concur in the decree which has been prepared.
■ Brooke, J.
I concur in the decree, without doubt or difficulty.
Tucker, R.
I have no doubt in this case, that the mistake on the part of Glassell was intirely an innocent one. No fraud, or intention to deceive, can fairly be imputed to him. The parties in the cause have not imputed it, and their counsel have disavowed it. He had no motive for it. Anxious to sell bis own land, it is inconceivable why he should have pointed out the land of another as the subject of the contract, unless he designed to consummate a gross fraud by conveying inferiour land of his own at the price of that other. But this he has not done. The error, indeed, was the obvious error of his son, arising, we cannot tell how, but committed on a visit to Kentucky anteriour to the treaty between the parties. It was an error too into which Towles fell, through his agent, and in which, strange to tell, Leathers and the surveyor also participated. In them it can only be accounted for by a want of the title papers, which the younger Towles omitted to take with him. Be this as it may, it was a common error in all concerned; and as the surveyor, and Leathers a near neighbour to the land, have *129 fallen into it, it cannot be considered as a gross or blame- , , . r , ,. . able error m any oi the contending parties.
The principle of equity applicable to such a transaction, is as plain and familiar as it is just and equitable. Where there is an error in the substance of the thing contracted for, so that the purchaser cannot get what he substantially bargained for, or the seller would be compelled to part with what he had no idea of selling, the contract ought to be vacated even if it had been executed. To say that one party shall be compelled to take what he had no idea of purchasing, or that the other shall be forced to part with what he had no idea of selling, would not be justice; it would be tyranny ; it would be to make a contract rather than enforce one. Such a power is disavowed by the courts of justice; and, accordingly, the books abound with cases in which contracts have been rescinded, or their specific execution refused, because of an essential mistake in the thing contracted for. Graham v. Hendren, 5 Munf. 185. Chamberlaine v. Marsh, 6 Id. 283. Caherley v. Williams, 1 Ves. jr. 210. and the general principles on this subject stated 2 Rand. 66. But this rule to be just must like all others be mutual. The privilege extended to one party cannot be denied to the other; for equality of rights is of the essence of justice. The rale must work both ways and for both parties, where there has been no fault or culpable negligence in either.
Such is the case here. An innocent mistake has been committed. Towles contracted to buy one half of a specified tract of land. It was described by a plat, and though there was not a marked boundary upon it, yet the position of Deer creek upon it ascertains its identity beyond all controversy. It is true he was to buy half of the Mercer grant which Glassell owned. But the plat of Hewis's land was shown him as the true Mercer grant which Glassell owned ; and as the land was the important matter whence-soever derived, the substance of his engagement was to take one half of that identical tract which had Deer creek upon *130 it, and turns out to be Lewises land. It is true also, that tbe defendant Towles was very particular about the tract he should get; and it was very truly said by Mr. Leigh, that the Lewis land was in fact what he expected to get, and we cannot make him take any other against his will.
What then are his rights growing out of this transaction ? According to the authorities, he may say to Giassell, I will take the Lewis land or none at all; you must procure me that, or I will not execute the contract. Or, he may waive the right of rescission, and take what Giassell acknowledges he had agreed to give—the Mercer tract. Thus he has an election between these two courses; either to rescind, or to take what.it is in Glassell’s power to convey.
How is it with Giassell? He has committed an innocent mistake. He has erroneously conceived the plat made in 1814 to be the plat of his own land. We will suppose, for the sake of argument, that he has even conveyed it. He may invoke the aid of the principle above stated, and say to Towles—This contract has been entered into under a mutual misunderstanding, I will either convey to you what I innocently understood I was selling, or 1 will rescind the contract.
Towles, would have a right to select which he pleased of these alternatives. But he would have no right to rescind one half the contract, and enforce the other. I kno\v of no middle ground between a rescission in toto and a specific execution in toto. I know of no power in this court, to half-ratify, and half-annul, this or any other contract. If the contract is intire; if the reciprocal transfers of the Madison and Kentucky land, are indissolubly linked in the agreement of the parties; I can see no justice in compelling Glassell to keep the Madison land and the Kentucky land too. If they be so linked, and Towles refuses to take the latter, he must take back the former, and refund what he has received.
Accordingly, Mr. Leigh having discerned, that this contest would mainly turn upon the character of the contract *131 in this regard, he has strenuously urged upon the court, to bear in mind that this was not the case of an exchange of Madison and Kentucky land, but of independent, though mutual sales, and that, therefore, the failure of the contract respecting the Kentucky land, could not affect the Madison tract, the contract for the sale of which was independent of it. To sustain this position, he referred among other things, to the right which Glassell reserved to himself, of retaining the Kentucky laud upon a certain event. In reference to this argument in support of his opinion, I shall only say, that at most the provision could only have given a right to disunite things which otherwise were linked together, and, moreover, that it never was introduced into the contract, until six weeks after the execution of the original articles: add to which, Glassell never exercised the power of disuniting the two subjects of the contract of August 1815. But, though I think Mr. Leigh’s position is not sustained, yet it struck mo so forcibly, that I have thought it all important to examine it with care, as constituting the very gist of this matter. And, upon the most deliberate reflection, I am intirely satisfied, that the mutual engagements between the parties, respecting the Madison and Kentucky lands, constitute one dependent contract, the parts of which are indissolubly connected and linked together, and not two separate and distinct sales, which stood so independent of each other, that one might be annulled without in any wise affecting the validity of the other.
That such is the case, the object of the parties, the nature of the contract, its very language, and the distinct admissions of Thomas and of Towles, conspire to prove. The object of each party was to dispose of his land. Towles wished to dispose of his Madison land, altogether for money if he could, hut was willing to take western land in part, rather than fail. Glassell’s object was to convert his Kentucky property into Virginia property. The bill tells us, he was anxious to sell his Kentucky land, and to vest the proceeds in lands in Madison; and, in order to effect his *132 wishes, he proposed trading with Towles; that Towles yielded to the influence of Glassell’s persuasions, concluded a contract with Glassell, by which he sold him the Madison land at 15 dollars 50 cents per acre, and agreed to receive, in part payment for it, a tract of Kentucky land at valuation. Towles tells us, that Glassell agreed to purchase his Madison land, upon condition that he would take 1000 acres of Kentucky land; that he did not wish to take it, but rather than not sell, he agreed to take it at a valuation ; and that he did not believe Glassell would have purchased the Madison land, unless he had agreed to take the Kentucky land; at least, he said he would not. Here, then, the Kentucky land is to be taken by Towles in payment for that in Madison, and Glassell would only agree to take the Madison land, on condition that Towles would take 1000 acres of Kentucky land’ in payment. If, then, Towles is entitled to rescind the contract for the Kentucky land, because he cannot get the Lewis land, which was his object, Glassell is equally entitled to a rescission, if he cannot make payment in Kentucky land, which was his object.
The agreement in writing is as explicit as these representations of the parties. Towles agrees to sell to Glassell the Madison land at 15 dollars 50 cents per acre, to be paid in October 1816, when possession was to be giveD, “ if there is any left after the agreements hereafter mentioned are complied with.” This agreement was, that Towles was to take 1000 acres of land on the waters of Green river &c. at a valuation, at eighteen months credit. That it was to be taken in payment is obvious, because from what went before, it appears the balance to be paid in cash was to depend upon the amount to be deducted on account of this payment in land. Now, it is not conceivable, either upon any principle of law or the ordinary sense of mankind in relation to affairs, that two things can he more inseparably connected, than the sale of a tract of land and the stipulation as to the mode of payment. Nothing is more common than that men are willing to purchase land, *133 provided they are permitted to pay for it in property; and, moreover, instances must have occurred like this of Glassell’s, where a man has been willing to give a high price for Virginia lands, upon the other party agreeing to take payment in Kentucky lands. In such a contract, the disposition of the Kentucky land, is as much the substantive part of the contract with the owner, as the acquisition of any particular tract can be with the purchaser. To compel him to pay money when he contracted to pay in land, would be as unreasonable and unjust, and as substantially making a new contract for the parties, as to compel the buyer to take a tract he did not agree to purchase. And the two things are inseparably connected, for the one is the consideration of the other.
If this view of the case be correct, then 1 think it will follow, inevitably, that Towles may have a rescission of the whole contract, but cannot refuse to receive the Kentucky land, and insist upon Glassell’s retaining the Madison land. In short, the rights of the parties stand thus: Towles may demand a rescission, or the Kentucky land at his pleasure; but, if he says he will not take the Kentucky laud, Glassell will then have a right to resist any other terms than an intire rescission. He is, in no aspect, the debtor of Towles. He may well say, I owe you nothing : I engaged to pay you land which I am ready to pay, I did not promise to pay money and I will not pay it.
This election on the part of Towles, is essentially uecessary to ascertain the character of his demand against Glassell, as I shall presently shew. But I will first observe, that the right of election may be vitally important to him. Exposed as he may be to Thomas’s demand, it is, perhaps, not so embarrassing, as that of Glassell might be, in case of rescission. For, in that event, he must refund what he has received in cash from Glassell for the Madison estate. It is true, in this case, he would get back the land, as the representative of the money refunded; but so also would it be on his refunding to Thomas.
*134 If this right of election then be vitally important to Towles, I think it may be safely affirmed, that he alone can exert it, so far as the rescinding of the contract would go. Far as the principle of substitution has been pushed (and with great benefit, by the way) I do not think it could extend to vest in Thomas the right of deciding for him, that the whole contract should be rescinded. Having bought from him, indeed, his purchase from Glassell, I have no doubt he might assume to himself, on the principle of substitution, one branch of the alternative, and demand, that as the Lewis land cannot be conveyed to him, the Mercer tract shall. But he cannot go farther than even Towles—insist on Glassell retaining the Madison land, and paying up the value of the Lewis tract in money, when he was only bound to pay in land. This would be to rescind, in part only, this contract which I have shewn to be one and indivisible.
The view of the case which I have taken, if it be correct, at once settles the whole matter of the attachment remedy, on the ground of Glassell being the debtor to Towles for the value of the Lewis tract. There may, indeed, be sufficient ground of jurisdiction in the fact, that Glassell holds both the Madison and the Mercer tracts, in one of which Towles certainly has an interest; but there is, in my mind, no foundation for regarding him as subject lo a money demand, and decreeing against him accordingly.
• In the view which I have hitherto taken, I have had no eye to the execution of the deed from Glassell to Towles. It is upon the covenants -in that deed, that the plaintiff’s claim has been principally rested. Towles has been supposed to have had an immediate right of action upon the covenant of seizin, of which right of action the plaintiff may avail himself, either upon the ground of the attachment law, or of a supposed equitable assignment of that covenant. These views of the rights of Thomas have led to a protracted discussion, in which the construction of the attachment law has been involved. I shall not follow the steps of counsel herein. Admitting that Towles had a right of action, which was *135 liable to attachment, yet I cannot doubt, that it was competent for Glassell, the garnishee, to defend himself by shewing that whether chargeable or not in a court of law, by the covenants in the deed, he had a good equitable defence, in the fact that the very covenant on which his adversary rested his demand, if, indeed, it was an assurance of the Lewis tract, was founded in a mistake, against which it is the province of a court of equity to relieve, by arresting the demand and compelling Towles, either to accept a conveyance of the Mercer tract, or to rescind the contract in toto. The same answer presents itself, to the idea of the supposed equitable assignment to Thomas, implied by the transfer of the land to him ; for the assignee could not resist the equity which would have prevailed against his vendor.
The covenant in the deed from Glassell to Towles, however, having constituted so large a subject of discussion, it may not be improper to examine the deed in which it is found. It seems' to have been considered, on one part at least, as a deed for the Lewis tract, and the covenants and warranty as of course protecting the title to that land. I am by no means satisfied, that it is not either void for uncertainty, or a conveyance of the Mercer tract. The deed describes the land thereby conveyed, by reference to Ruby’s recent survey, and by the line trees, lines, courses and distances in that plat mentioned, and also as being one half of a 2000 acre survey number 1291, lying on Leer creek, patented to James Mercer on the 14th December 1787. No notice is taken of Leer creek running through the tract. I readily concede, that the lower tract in the plat of 1814, the same tract laid down in Ruby’s recent survey, was what the parties intended to convey: but it is equally clear, that they thought it was within the Mercer patent, when in fact it was Lewis’s. But a court of law could only look to the deed; and, in a court of law, if ejectment were brought for one half the Mercer tract, the description of boundaries agreeing in no wise with the real boundaries of that land, would probably be rejected as surplusage. In every deed, *136 there are various matters of description, some more vital and characteristic than others. As if a man should sell the house he purchased from A. B. situate in F. street, whereas it ¡s really situate in H. street; the fact that the house purchased by him of A. B. was situate in H. street would control the description of the deed as to its being in F. street, and the title would pass. So here, the Mercer tract of 2000 acres lying on Deer creek (for it lies very near to the main stream of the creek, and a branch of that passes through it) patented to James Mercer on the 14th December 1787, is a known, ascertained, well identified tract. Of this tract, so described, 1155 acres are conveyed. Had the deed stopped here, there can be no question that it would have been a sufficient description of the tract to have passed a title to an undivided moiety. Nor do I think the subsequent description would probably be regarded. It would be rejected as surplusage, or proved to be erroneous, by shewing that the boundaries did not coincide with the boundaries of the patent land. Could the court of law permit the party to shew that it was a different tract of land, held under a different patent, that was intended to be conveyed ? I doubt it. If, however, this evidence were permitted, then there would be two inconsistent,, incongruous and conflicting descriptions, which would probably avoid the deed for uncertainty. In either event, the warranty and covenant of title would be ineffectual to secure the Lewis tract. For, if the deed conveyed the Mercer tract, the warranty applied to that: if it was void for uncertainty, the warranty and covenants were void also.
The aspect in which I have regarded this case, renders unnecessary a consideration of much that has been urged on both sides. The objections to requiring Towles to take the Mercer tract, which have been raised for him, but not by him, are all of them answered by the singlé remark, that he has his option to do either of two things; to take that tract, or rescind the contract. That he bought to sell again, and that the Mercer tract may not be saleable; that Thomas *137 insists, as he perhaps is entitled to do, upon a rescission which will call upon Towles to refund the purchase money received, and that GlasselPs title to the Mercer tract, is not yet clearly made out; these are considerations, indeed, to be weighed by Towles, in making his option, but, surely, they cannot add to his rights, or detract from GlasselPs. The inconvenience to him, cannot lead us to rescind the contract, so far as it is prejudicial to him, and to enforce it, where it may subserve his interests, though ruinous to his adversary.
Some inconvenience is inevitable, where a mistake so vita], and so long undiscovered, has tangled up a transaction. The conveyance to Thomas is the principal source of difficulty. Were he willing to take the Mercer tract at a fair valuation, according to the state of things in 1816, every difficulty would be removed; for the court sees none in the objections that were made to the title of Glassell to the Mercer tract.
The decree pronounced by the court, declared, that there was error in the decree of the court of chancery : that that court ought not to have considered Towles as the creditor of Glassell, and Thomas as entitled to attach in the hands of Glassell, the supposed debt due from him to Towles, the absent defendant: that, an innocent mistake having arisen in the transaction, not more chargeable upon Glassell than upon Towles, the defendant Towles had a right to waive the contract, or to accept the performance of it, as understood by Glassell; and, as Thomas was a purchaser from Towles, of the land which he had purchased from Glassell, Thomas was entitled to select one half of the Mercer tract of 2000 acres, granted to James Mercer by the patent of the 14th December 1787, and to have a conveyance thereof from Glassell, with general warranty and the usual covenants of title ; and also to have a decree against Glassell for such sum as the tract so selected might, upon a proper proceeding instituted for that purpose, have been ascertained to be *138 inferiour in value (if at all) to the Lewis tract on the 31st October 1816, with interest thereon from that date till paid; and upon rendering such decree, no costs should be awarded to either party : and that, in case of the refusal of Thomas to accept such a decree, within a reasonable time, to be fixed by the court, his bill should have been dismissed with costs, but without prejudice to any suit he might choose to prosecute against Towles. Therefore, the decree was reversed, with costs, and the cause remanded to the court of chancery to be proceeded in according to the principles here declared.
After this decree was announced, the counsel for the appellee reminded the court, that Glassell had not exhibited all the title papers, by which he deduced the title to the Mercer tract from the grantee to himself; and they suggested, that it might turn out, upon further inquiry, that he had really no better title to the Mercer tract than he had to the Lewis tract, in which case, surely, he would owe the absent defendant Towles a debt upon the breach of his covenants, that might well be attached in his hands, to satisfy the debt due from Towles to Thomas; and that provision ought to be made in the decree for this state of things, in case it should occur.
Sed per curiam. No alteration in the decree is necessary. The question of the validity of GlasselVs title to the Mercer tract, was not made in the cause. The record presents no reasonable doubt of its validity, even if it had been so made. The vendee contracted for the deed of Glassell with the usual covenants of title; and, although this court will not compel a vendee who has even thus contracted, to take a bad title, or one of questionable character, yet that fact must be properly established, before it can serve as the foundation of a^ decree. But, in truth, in this case, the court compels neither Towles nor Thomas to take the Mercer tract. Though, in considering the rights and remedies *139 of Thomas, the rights and remedies of Towles were neces- • ° , sanly a subject of inquiry; yet the court has rendered no decree as between Towles and Classell, except that, if Thomas chooses to take the Mercer tract, he may do so on the terms prescribed; and that, indeed, incidentally, would put an end to the controversy between Towles and Glassell. The court has only pronounced, that Glassell is liable to a rescission of the intire contract, or to a decree for conveyance of the Mercer tract, and to nothing more; that Thomas in right of Towles, may demand the latter, though Towles only can insist upon the former. Thomas, therefore, may refuse to take the Mercer tract, on account of his doubts about the title, or for any other cause; but if he does refuse, he has no title to any other redress in this suit, and his bill must then be dismissed. It is, however, obvious, that if the deed be made to him, and the title proves defective, a right of action upon the warranty and covenants of title, will at once accrue to him, and in that action the validity of title may fairly be put in issue and decided. It has not been so put in issue in this cause; and the court, therefore, cannot found its decree upon any supposed defect.